20627

SOUTH CAROLINA STATE PORTS AUTHORITY, Respondent, v.
SOUTH CAROLINA COASTAL COUNCIL, Appellant.

(242 S. E. (2d) 225)

*Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Dept. Atty. Gen.,* and *Keith M. Babcock, Staff Atty.,* of Columbia, and *Benjamin H. Gregg, Jr.,* of Charleston, *for Appellant,*

*William H. Vaughan, Jr.,* of Charleston, *for Respondent,*

March 2, 1978.

*Per Curiam:*

We are called upon by this appeal to determine whether respondent South Carolina State Ports Authority [Ports Authority] is required by Section 48-39-130, 1976 Code of Laws of South Carolina, as amended, to submit its Wando River project to the permit-issuing jurisdiction of appellant South Carolina Coastal Council [Coastal Council]. The lower court held the Wando River project was exempt from Coastal Council's permit-issuing jurisdiction. We affirm.

Ports Authority was created by Act No. 626 of the 1942 Acts of the General Assembly [Section 54-3-10, *et seq.*, 1976 Code] to "engage in promoting, developing, constructing, equipping, maintaining and operating the harbors and seaports within the State." Section 54-3-110. In 1973 Ports Authority purchased a tract of land on the east bank of the Wando River in Charleston Harbor for the construction of additional harbor terminal facilities. The Wando River site was purchased at a cost of $1,539,840.

On September 30, 1974, Ports Authority filed applications with the South Carolina Water Resources Commission for a state permit from the Budget and Control Board and with the United States Army Corps of Engineers for a federal permit. The Budget and Control Board issued a state permit for the Wando River project on February 6, 1976. A separate permit was issued for a companion channel

dredging project on September 16, 1977. At the time of these proceedings no federal permit had been received.[1]

On May 24, 1977, the Governor signed into law Act No. 123 of the 1977 Acts of the General Assembly creating the South Carolina Coastal Council. Act No. 123 became effective on July 1, 1977, and has been codified as Section 48-39-10, *et seq.*, 1976 Code. Among other things, the Act provides that no alteration can be made to any "critical area" of the State as defined in Section 48-39-10(J) without a permit from Coastal Council. Section 48-39-130. The Wando River project is conceded to be an alteration to a critical area within the meaning of Section 48-39-130.

Subsection (C) of Section 48-39-130 contains an exemption from this permit requirement, and provides as follows:

(C) Ninty days after July 1, 1977 [September 28, 1977] no person shall fill, remove, dredge, drain or erect any structure on or in any way alter any critical area without first obtaining a permit from the Council. Provided, however, that a person who has legally commenced a use such as those evidenced by a state permit, as issued by the Budget and Control Board, or a project loan approved by the rural electrification administration or a local building permit or has received a United States Corps of Engineers or Coast Guard permit, where applicable, may continue such use without obtaining a permit. Any person may request the Council to review any project or activity to determine if he is exempt under this section from the provisions of this chapter. The Council shall make such determinations within forty-five days from the receipt of any such request.

Coastal Council interpreted the exemption contained in the proviso to Section 48-39-130(C) as only applying to those projects that had actually broken ground on or before September 28, 1977. Since actual construction had not commenced at the Wando River project on September 28, 1977,

---

[1] The U. S. Army Corps of Engineers subsequently issued a federal permit for the project on December 27, 1977.

Coastal Council notified Ports Authority that it intended to evoke its permit-issuing jurisdiction and reprocess the state permits Ports Authority had received from the Budget and Control Board.

On November 22, 1977, Ports Authority initiated this action in the Charleston County Court of Common Pleas seeking a declaratory judgment construing Section 48-39-130(C) and an order setting aside Coastal Council's administrative decision regarding the Wando River project.

The matter was heard by the Honorable Clarence E. Singletary who issued his order on December 20, 1977, declaring the Wando River project exempt from Coastal Council's permit-issuing jurisdiction under the provisions of Section 48-39-130(C). This appeal by Coastal Council followed.

This controversy arose from a dispute over the interpretation of the following portion of the proviso contained in Section 48-39-130(C):

Provided, however, that a person who has legally commenced a use such as those evidenced by a state permit, as issued by the Budget and Control Board, . . . may continue such use without obtaining a permit [from Coastal Council].

Coastal Council contends the state permits held by Ports Authority only evidence the legality of the Wando River project and do not determine whether the project had commenced within the meaning of the proviso. Coastal Council argues that a use could have commenced only if ground had been broken at the project site.

Ports Authority alleges it had taken every action it could in regard to the Wando River project on September 28, 1977, and contends the state permits it holds are all that is required by the statute to exempt the Wando River project from Coastal Council's permit-issuing jurisdiction.

We agree with Judge Singletary's resolution and adopt the following portions of his order with modifications as the opinion of this Court:

## ORDER OF JUDGE SINGLETARY

The provision (commonly called the Grandfather Clause) in Section 13(C) [Section 48-39-130(C)] says that any person who has legally commenced a use is exempt. [A] "state permit, as issued by the Budget and Control Board," is one of three items any one of which is to be accepted as evidencing a legally commenced use. Early in the dispute between these agencies there appeared to be a contention that these three items evidenced only the legality of the use. At the oral argument both parties agreed that these three items were each evidence of a legally commenced use. Evidence used as a transitive verb is defined in *Webster's Third International Dictionary* (unabridged 1971) as: to offer or constitute evidence of, prove, display, evince. Therefore, any one of these three items is proof of a legally commenced use. The Ports Authority had State permits issued by the Budget and Control Board. The Ports Authority purchased the land for the Wando Project with State funds [$1,539,840]. In reliance upon the State permit the Ports Authority pursued the processing of the application for the Federal permit, expended substantial funds [$900,000], commissioned studies, prevailed upon an adjoining landowner to donate more than 1,000 acres of wetlands to a nature preserve, and used the permit and the land in every way it could pending final decision on the Federal permit.

. . . Nothing in the Act undertakes to cancel State Permits issued by the Budget and Control Board. In fact, Sections 13 and 21 [Section 48-39-130 and Section 48-39-210] granted to the Budget and Control Board yet an additional 90 days to issue permits. It would have been inconsistent for the General Assembly to grant the additional time to issue the Budget and Control permits if they [the permits] were to be void and of no consequence unless construction started under the permits.

This act is prospective. I cannot accept the contention of the Coastal Council that they are authorized to review all of

the State permits previously issued by the Budget and Control Board. The statute does not provide it, and it would be disruptive and prohibitively retroactive for the Coastal Council to reopen these past valid State actions. The act contemplated that normal development would continue while the permitting authority shifted [from the Budget and Control to the Coastal Council] and the planning program evolved.

. . . I conclude that the Ports Authority had legally commenced a use and is entitled to an exemption. Therefore, the Ports Authority may continue such use without a permit from the Coastal Council.

Affirmed.